# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
  **Plaintiff,**

  v.               **Case No. 98-CR-60**

**GREGORY SALLIS**
  **Defendant.**

## DECISION AND ORDER

Defendant Gregory Sallis moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) permits the court, in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, to reduce the term of imprisonment if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Defendant relies on Amendment 750 to the guidelines, which the Commission has designated for retroactive application in policy statement 1B1.10(c). However, because Amendment 750 does not lower defendant's range, I deny the motion.

## I. BACKGROUND

On September 30, 1998, a jury convicted defendant of conspiracy to distribute crack cocaine and related offenses. The trial took place before the Supreme Court decided <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and, consistent with the practice at the time, the jury was not instructed to determine the amount of crack cocaine involved in the offenses. At defendant's January 22, 1999, sentencing hearing, Judge Thomas Curran found a drug weight of 1.5 kilograms or more of crack cocaine, which produced a base offense level of 38. U.S.S.G. § 2D1.1(c)(1) (1998). At the time, base level 38 – the highest

in § 2D1.1(c) – was reserved for cases involving 1.5 kilograms or more of cocaine base; thus, Judge Curran had no occasion to determine a precise amount above 1.5 kilograms. He then added 2 levels for firearm possession, U.S.S.G. § 2D1.1(b)(1), for a final level of 40. Judge Curran also found that defendant was a career offender under U.S.S.G. § 4B1.1, which produced a base level of 37. However, because the offense level under § 2D1.1 was higher, Judge Curran used level 40, see U.S.S.G. § 4B1.1(b), which, coupled with defendant's criminal history category of VI, produced an imprisonment range of 360 months to life. Judge Curran sentenced defendant to 360 months in prison.

Defendant appealed his convictions and sentence, challenging, inter alia, the district court's decision to hold him responsible for at least 1.5 kilograms of crack. The Seventh Circuit affirmed, United States v. Hardin, 209 F.3d 652, 660-62 (7th Cir. 2000), but the Supreme Court vacated the sentence and remanded for further consideration in light of Apprendi. On remand, the Seventh Circuit again affirmed the sentence, finding no plain error in the district court's failure to submit drug weight to the jury. United States v. Robinson, 39 Fed. Appx. 386 (7th Cir. 2002). The court explained that:

> The evidence was overwhelming that the conspiracy consisted of a drug ring that moved drugs from Los Angeles . . . first to Minneapolis and, when the heat was on there, to Milwaukee. In 1995 a man named Gren Huley and Sallis were selling ounce and multi-ounce quantities of crack. Several couriers brought the drugs to Milwaukee. Flight records and Greyhound bus tickets verify that at a minimum couriers took 50 trips in 1997. One person took 7 to 10 trips between February and July 1997. During the fall of 1997, at least four couriers brought back what were referred to as "cookies," packages of crack which were strapped to their bodies. The couriers brought two cookies at a time, which amounted to approximately one kilogram of crack per trip.
>
> In addition, in December 1997, Drug Enforcement Agency agents arrested one member of the ring, Eugene Ward, with a half kilogram of powder cocaine. This dealer had been in business, getting crack from Sallis since early in the year. After his arrest, Ward began to cooperate with the agents and testified to observing Sallis on one occasion with 20 to 30 ounces of

2

>crack. Another witness testified that on a particularly lucrative day in April 1997, the conspiracy grossed approximately $100,000.
>
>Given this and considerable additional evidence, a jury who found these men guilty could not reasonably have concluded that they only dabbled in a small amount of crack. Without question, had the issue been put to it, the jury would have found that more than 50 grams of cocaine base was involved.

Id. at 388-89.

In October 2008, defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 706 to the guidelines, which generally reduced offenses levels in crack cocaine cases by 2. I denied the motion,[1] finding that Amendment 706 did not lower defendant's range. First, the evidence showed that defendant was responsible for well in excess of 4.5 kilograms of crack cocaine, which produced the same base offense level of 38 under the amended guidelines. See U.S.S.G. § 2D1.1(c)(1) (2007). Second, even if defendant's base level were reduced from 38 to 36, after adding 2 levels for firearm possession the adjusted level of 38 coupled with defendant's criminal history category of VI still produced a range of 360 months to life. The Seventh Circuit summarily affirmed my denial of the motion. United States v. Sallis, No. 09-1217 (7th Cir. Mar. 13, 2009).

## II. DISCUSSION

In the instant motion, defendant relies on Amendment 750, which the Commission adopted in response to the Fair Sentencing Act ("FSA") of 2010. The Amendment revised the crack cocaine guideline to align with the new 18:1 crack-to-powder cocaine ratio set forth in the FSA. As indicated, the Commission designated Amendment 750 for retroactive application, U.S.S.G. § 1B1.10(c), so if the Amendment lowers defendant's range he is eligible for a reduction under 18 U.S.C. § 3582(c)(2). See United States v. Jackson, 573

---

[1] The case was reassigned to me on Judge Curran's retirement.

F.3d 398, 399 (7th Cir. 2009) (holding that district courts may grant § 3582(c)(2) relief if the amendment (1) is retroactive and (2) lowers the guideline range).

Amendment 750 does not lower defendant's range. First, the evidence in this case, as recounted above, demonstrates that defendant is responsible for well in excess of 8.4 kilograms of crack, the amount needed to trigger base level 38 under the current guidelines. U.S.S.G. § 2D1.1(c)(1) (2012). Indeed, the evidence supports a weight of at least 50 kilograms of crack. Robinson, 39 Fed Appx. at 389 ("Flight records and Greyhound bus tickets verify that at a minimum couriers took 50 trips in 1997. . . . The couriers brought two cookies at a time, which amounted to approximately one kilogram of crack per trip."). Defendant argues for a revised range based on a drug weight of 1.5 kilograms, the amount Judge Curran used in 1999, which would produce a base level of 34 under the current guidelines, U.S.S.G. § 2D1.1(c)(3) (2012), with a resulting range of 324 to 405 months. However, the district court is free in deciding a § 3582(c)(2) motion to recalculate the drug quantity with greater precision so long as its finding is supported by the record and not inconsistent with the findings made in the original sentencing proceeding. United States v. Duncan, 639 F.3d 764, 767-68 (7th Cir. 2011). As indicated above, Judge Curran had no reason to find a specific weight above 1.5 kilograms, and the court of appeals in affirming my denial of the 2008 motion agreed that the weight was easily in excess of 4.5 kilograms; it is also easily in excess of 8.4 kilograms.[2]

Second, even if defendant's U.S.S.G. § 2D1.1(c) base level dropped under Amendment 750, his guideline range would not change because the career offender level

---

[2]Using a weight of 4.5 kilograms also would not help defendant. Under that scenario, the base level would be 36, U.S.S.G. § 2D1.1(c)(2) (2012) (covering 2.8 to 8.4 kg); adding 2 levels for the firearm, the final level would be 38, producing the same range of 360 months to life.

4

of 37 would kick in; level 37 and category VI also produce a range of 360 months to life. A career offender cannot, even if his U.S.S.G. § 2D1.1(c) base level drops, obtain a reduction pursuant to § 3582(c)(2) below the range produced by U.S.S.G. § 4B1.1. United States v. Williams, 694 F.3d 917, 918-19 (7th Cir. 2012).

Citing United States v. Blewitt, 719 F.3d 482 (6th Cir. 2013), defendant argues that the FSA, including its new, lower mandatory minimums, applies in a § 3582(c)(2) proceeding. On July 11, 2013, the Sixth Circuit vacated the panel's decision in Blewitt, granting re-hearing en banc. In any event, the Seventh Circuit, where I sit, has held that those sentenced prior to 2010, like this defendant, remain subject to the pre-FSA version of 21 U.S.C. § 841(b). United States v. Foster, 706 F.3d 887, 888 (7th Cir. 2013). Finally, even if it would be appropriate to consider the FSA's new weight thresholds in this proceeding, defendant's drug weight would suffice to trigger a 10 years to life statutory range. Defendant contends that the absence of a drug quantity in the indictment or the jury's verdict requires modification of the statutory penalty range to 0 to 20 years. The Seventh Circuit rejected that argument in 2002. Robinson, 39 Fed. Appx. at 389.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for reduction of sentence (R. 557) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of September, 2013.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge